**Elbert COOK, Appellant,**

**v.**

**Otis R. BOWEN,* Secretary of the United States Department of Health and Human Services, Appellee.**

**No. 85–2438.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1986.

Decided Aug. 1, 1986.

---

* Secretary Bowen, Margaret M. Heckler's successor, was appointed during the pendency of this appeal and is substituted as the appellee. *See* Fed.R.App.P. 43(c).

Michael R. Gott, Jonesboro, Ark., for appellant.

Karen J. Behner, Dallas, Tex., for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LARSON,** Senior District Judge.

WOLLMAN, Circuit Judge.

Elbert Cook appeals the district court's judgment affirming the denial of his application for disability insurance benefits and supplemental security income benefits. Cook argues on appeal that the Secretary's decision that Cook was not disabled is not supported by substantial evidence. Cook further contends that he was not afforded a fair hearing and that the Secretary failed

to consider subjective evidence of pain. Because we find that the Secretary erred in concluding that Cook did not qualify for automatic disability under any of the listed impairments at 20 C.F.R., Part 404, Subpart P, App. 1 (1986),[1] we do not reach Cook's arguments on the fair hearing and pain issues.

Cook filed his applications for disability benefits on July 8, 1983, claiming a disability since May 3, 1982. The applications were denied both on initial review and on reconsideration. Cook requested a hearing before an administrative law judge (ALJ), and one was held on February 10, 1984. Cook elected not to have an attorney present at the hearing. Based upon a record consisting of medical documents and reports and the hearing testimony of Cook and his mother, the ALJ concluded that Cook was not disabled and thus not entitled to the benefits sought. Cook filed a request for review of the decision on April 12, 1984, and appointed a representative, his counsel on this appeal, the following day. The Appeals Council denied the request for review, and thus the ALJ's decision became the final decision of the Secretary. Cook appealed the decision to the district court, and now appeals from that court's judgment against him.

Cook was forty-five years old at the time of his application. He has a fourth or fifth grade education. He had worked as a laborer in the cotton fields, as a construction worker, and most recently as a janitor. Cook was injured in an automobile accident on May 3, 1982, the date that he claims his disability began. He has not been employed since that date. A report by Dr. J.M. Robinette upon Cook's discharge from the hospital ten days after the accident indicated that Cook had suffered a cerebral

** The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. We cite and quote only the current Code of Federal Regulations in this opinion because our review of the 1985 regulations shows that there is no difference between the old and new regulations that is material to the case. The 1986 regulations include new provisions concerning the determination of severe impairments under step two when mental disorders are involved, 20 C.F.R. §§ 404.1520a, 416.920a (1986), but these provisions do not affect our analysis here, which is under step three. The material at 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00 (1986) has also been revised, but not in any way that disturbs our conclusions on the evidence here.

concussion and experienced acute cervical strain with degenerative joint disease. When admitted on the day of the accident, Cook was in considerable pain and may have lost consciousness for a time. He was given conservative treatment initially and later responded slowly to extensive physical therapy. Upon discharge he had mild pain and some limitation of motion in his neck. Cook was readmitted to the hospital for a fifteen-day period in late June and early July 1982. He was treated with extensive physical therapy and slowly responded to the treatment. He was discharged to have daily outpatient physical therapy.

In October 1982, a consulting physician reported that Cook was in no acute distress. The doctor considered Cook's chief problem to be his inability to flex his neck completely to the left and to completely extend his neck, but concluded that the neck was stable and that Cook did not need any active treatment. The doctor noted that "[i]n my judgment he should return to some form of work." Record of Administrative Proceedings at 141. Another general consultative examination was performed on March 9, 1983, by Dr. Nguyen Huu Dong. At the examination Cook complained of the pain and limited motion in his neck since 1982 and of extreme nervousness and sleep loss since 1981. Dr. Dong's examination showed a normal neck and spine with full flexion of the cervical spine and fifty percent limitation in extension and lateral inclination or rotation. X-rays showed normal cervical curvature but with some degenerative changes and a questionable fusion. The doctor's diagnosis was that Cook experienced chronic cervical strain, moderate traumatic arthritis of the cervical spine with no signs of nerve root compression, and chronic anxiety neurosis.

A March 11, 1983, letter from Dr. Robinette to Social Security Administration (SSA) personnel indicated that Cook's major disability was his chronic neck strain and his mental retardation. A psychological report on Cook was completed on March 25, 1983, by Curtis Atkinson, Ph.D., a licensed psychologist. The report showed a verbal I.Q. of 69, a performance I.Q. of 67, and a full scale I.Q. of 67. The report indicated that Cook was functionally illiterate but had a knowledge of arithematic functions of addition, subtraction, division and multiplication for simple numbers. He also had the ability to understand simple verbal instructions. The report concluded that Cook had no personality problems and that he could "make plans for the future, set priorities and manage his own finances," but that he did this by utilizing help from others. Record of Administrative Proceedings at 156.

On July 6, 1983, Cook saw Dr. Floyd A. Smith, whom he had last seen in April of 1978. Dr. Smith indicated in communications with SSA personnel that Cook had a history of a seizure disorder that could be controlled with medication and that he had taken Butisol, a sedative drug, for his nerves. The doctor reported, however, that he had never been able to get a description from Cook typical of seizures nor had he actually observed any seizure activity. During the July 1983 examination Cook complained of low back pain, which Dr. Smith diagnosed as questionable low back strain.

Cook testified that he had been laid off from his last job as a janitor some time before the auto accident, for reasons unknown to him but apparently not as part of a general layoff. He stated that his worst problem was his nerves with their accompanying spells, and then his neck. His spells consisted of periods when he would "fall out ... like somebody hit you," and would throw up. Record of Administrative Proceedings at 31. He was generally taken to the doctor to get a shot of some sort in connection with these spells, which he said occurred once or twice annually. Three relatives submitted statements describing the spells. Cook further testified that he was currently taking Butisol for his nerves and had been doing so for thirty years. Cook also testified concerning his pain and the limited motion in his neck. When the ALJ questioned Cook about his pain, Cook responded that "sometimes when I try to

sleep it bothers me a little bit." Record of Administrative Proceedings at 35. Upon further questioning Cook indicated that he did yard and house work and drove an automobile.

The ALJ evaluated Cook's applications under the five-step evaluation procedure established by the Secretary for determining disability. 20 C.F.R. §§ 404.1520, 416.-920 (1986). The ALJ found that although Cook was not working and had a severe impairment, thus satisfying the first and second steps, 20 C.F.R. §§ 404.1520(b), (c), 416.920(b), (c) (1986), his impairment did not meet or equal any of the impairments listed at 20 C.F.R., Part 404, Subpart P, App. 1 (1986). Failure to satisfy this third step moved the evaluation on to the fourth step, a determination of whether Cook had the residual functional capacity to perform his past relevant work as a janitor. Because the ALJ found that Cook could perform his past relevant work he concluded that Cook was not disabled.

Our role on review is to determine whether the Secretary's decision is supported by substantial evidence on the entire record. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir.1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Id.* Although Cook has directed his arguments primarily at the Secretary's findings on the fourth step, we understand Cook to argue as well that there is no substantial evidence supporting the Secretary's finding on the third step. The third step in the disability evaluation process provides that "[i]f you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, edu-

cation, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986).

Among the listed impairments at 20 C.F.R., Part 404, Subpart P, App. 1 (1986), is section 12.05C which concerns mental retardation. Section 12.05C provides that the required level of severity for the disorder of mental retardation is satisfied when a claimant shows "[a] valid verbal, performance, or full scale I.Q. of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function." As indicated above, Cook has a verbal I.Q. of 69, a performance I.Q. of 67, and a full scale I.Q. of 67.[2] These I.Q. scores, which were recorded in the context of a full psychological report on Cook, satisfy the first requirement of section 12.05C.

The second requirement under section 12.05C is "a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.05C (1986). In addition to his mental retardation, Cook has a nervous condition, a stiff neck from an auto accident and possibly some arthritis, pulled muscles in his back, and a seizure disorder. The ALJ, in evaluating step two, found that Cook had a severe impairment, which is "any impairment or combination of impairments which significantly limits * * * physical or mental ability to do basic work activities."[3] 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986). An impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal. *Nieves v. Secretary of Health and Human Services*, 775 F.2d 12, 14 (1st Cir.1985); *Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir.1985). *Nieves* holds that where a claimant's impairment is

2. Cook's I.Q. scores were measured on the Wechsler Adult Intelligence Scale (WAIS), which is specifically endorsed by the regulations. 20 C.F.R., Part 404, Subpart P, App. 1, §§ 12.00D, 12.05 (1986).

3. This court has held recently that the second step of the evaluation process is contrary to the provisions of the Social Security Act and thus

invalid. *Brown v. Heckler*, 786 F.2d 870 (8th Cir.1986). However, *Brown* does not diminish the persuasive effect of the ALJ's finding that Cook had a severe impairment under the second step, especially where the ALJ stated that Cook's impairment "significantly limits his ability to perform basic work activities." Record of Administrative Proceedings at 10.

found to be severe under the second step, it automatically satisfies the significant limitations standard of section 12.05C. 775 F.2d at 14. *Edwards* holds that the impairment required under the second part of section 12.05C is something less than severe as defined in section 404.1520(c). 755 F.2d at 1515.

Under either the *Nieves* or the *Edwards* test, the evidence and the findings of the ALJ persuade us that Cook has a significant limitation in addition to his I.Q. scores. Cook therefore meets the requirements of the listed impairment in section 12.05C. If a severe impairment is of the degree set forth in a listing, then a finding of disability is required. *Smith v. Heckler*, 735 F.2d 312, 317–18 (8th Cir.1984).

█ The ALJ's failure to find that Cook's impairments meet or equal a listed impairment would at the least make a remand for redetermination of Cook's claim appropriate. " 'Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate.' " *Smith*, 735 F.2d at 318 (quoting *Tennant v. Schweiker*, 682 F.2d 707, 710 (1982) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981))). Our review of the record satisfies us that the evidence and the findings compel the conclusion that Cook is disabled and entitled to benefits because his impairment meets or equals a listed impairment.

The judgment of the district court is reversed, and the case is remanded with instructions to remand to the Secretary for the payment of benefits.