Cora Mae **WARREN**, Plaintiff–Appellant,

v.

Donna E. **SHALALA**, Secretary, Department of Health and Human Services, Defendant–Appellee.

No. 93–3487.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1994.

Decided July 19, 1994.

E. Gregory Wallace, Jonesboro, AR, argued (Anthony W. Bartels, on the brief), for appellant.

Pamela M. Wood, Dallas, TX, argued, for appellee.

Before McMILLIAN, Circuit Judge, OAKES,* Senior Circuit Judge, and FAGG, Circuit Judge.

OAKES, Senior Circuit Judge.

Cora Mae Warren appeals from an adverse decision of the United States District Court for the Eastern District of Arkansas, Henry L. Jones, Jr., United States Magistrate Judge, dismissing her claim for disability insurance benefits on the basis that substantial evidence on the record as a whole supports the decision of the Secretary of Health and Human Services. 42 U.S.C. § 405(g) (1988). At all relevant times, Warren has had mental retardation with an IQ of between 60 and 70; therefore, to receive social security benefits, she need only have shown that at the relevant time she had a "physical ... impairment imposing additional and significant work-related limitation of function." 20

C.F.R., Part 404, Subpart P, App. 1, § 12.-05C. The record shows that, since 1979, Warren has had back trouble causing significant work-related limitation of function. Thus, Warren meets the level of severity sufficient to demonstrate disability on the basis of mental disorder. We therefore reverse because the administrative findings are not supported by substantial evidence.

## I. BACKGROUND

Warren was born on January 25, 1946, and hence was 35 years old on the alleged onset date, April 15, 1981, and on the date her insured status expired at the end of that year. By virtue of special education she went to or through the ninth grade but can only read and write a little. She has worked as a housekeeper for a day care center, and at a Holiday Inn Motel where, on April 27, 1979, while moving a heavy piece of furniture, she felt a snap on her right side with immediate sharp pain localized to the lower back. She worked the rest of that day and contacted her private doctor that night but remained off work for five days. She remained off work, on and off, two to three days at a time thereafter. According to a May 11, 1981, report of Dr. J.S. Player, a consulting specialist in orthopedic surgery, her back had more recently become worse with numbness and tingling, as well as decreased sensation to pin prick, in her right foot. He also found tenderness over the right sacroiliac joint with marked tenderness over a palpable cord over that joint. X-rays taken in January of 1981 revealed, according to his report, that she had a congenital back condition consisting of an absence of the L5 vertebrae or a "sacralization" of that vertebrae. His impression was that she had "Lumbar Syndrome with right SI [sacroiliac] Joint pain" and felt that she had a "chronic situation which may or may not be due to the pre-existing congenital deformity." We note that, in referring to this doctor's report, the administrative law judge ("ALJ") wrote that the "examination was essentially unremarka-

---

\* The Honorable James L. Oakes, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

ble" and that "[x]-rays did not show any significant abnormalities," a finding that is at direct odds with the report in question. ALJ Findings and Decision, *In re Warren*, at 3 (E.D.Ark. Nov. 27, 1991).

A chiropractor substantiated Dr. Player's opinion that Warren had a chronic back condition and that, as a result, Warren had been unable to work since 1979. The ALJ discounted the chiropractor's statement because he did not begin to treat her until 1983. However, another doctor, Charles M. Holzner, M.D., who examined her on May 29, 1984, with a main complaint of back pain, gave a report listing the same history as given to Dr. Player, the orthopedic surgeon in 1981, and which found straight leg raising caused pain and gave a diagnosis of "[l]umbo sacral strain possibly ... a herniated disk of long duration." Between the examination by Dr. Player and the examination by Dr. Holzner, her attending physicians were Drs. Shaneyfelt and Brown who, according to Dr. Holzner, treated her erroneously with Isordil, Bumex and Lanoxin.[1]

The mental evidence, which the ALJ quite properly found related back to the claimant's condition in 1981, consisted of a psychological report done by a clinical psychologist on March 13, 1986, yielding a verbal IQ score of 67, a performance IQ of 65 and a full scale IQ of 64, placing her in the mild mental retardation range. Because there was no evidence of a traumatic event which would have produced a sudden decline in intellectual functioning and no evidence of a higher level of functioning at some prior time, the ALJ found accordingly that Warren certainly had "severe" impairment prior to the close of December 1981. Nevertheless, the judge found that Warren was not disabled because he disregarded her back pain and her many other complaints, including asthma, heart trouble, nervousness, high blood pressure, obesity, and shortness of breath, among others. The judge discounted Warren's documented medical conditions and complaints despite her statements that she had to stop frequently and rest from doing housework because of the pain in her back, that her back hurt when she laid down, that she could not stoop down but had to kneel down in order to raise an object from the floor, and that she could not walk a block without hurting and having to stop. The ALJ held that, from the alleged onset date to the close of December 1981, Warren had no impairment or combination of impairments that imposed limitations on her ability to work beyond those imposed by the mental retardation. He added, not taking into account Dr. Holzner's report, that "Dr. Shaneyfelt's treatment of the claimant was apparently effective," and that there had been "apparent effectiveness of medications," *In re Warren*, at 6, evidently being unaware of, or not taking into account, Dr. Holzner's view on the medications prescribed for her by Dr. Shaneyfelt, note 1, *supra*. His final conclusion that "the claimant's subjective complaints were not entirely credible with respect to the alleged severity," was based on his view of the claimant's work record ["poor"], her daily activities [cleaning her house each morning, watching some television, visiting neighbors and relatives and attending church regularly], the "apparent effectiveness of medications" [but see Dr. Holzner's report], the lack of aggressive medical care during the period in question [Dr. Shaneyfelt's and the chiropractor's], and the functional restrictions. *In re Warren*, at 6.

The magistrate judge was not persuaded that the claimant had demonstrated "physical or other mental impairment imposing additional and significant work-related limitation of function" even while finding "a chronic persistent back pain problem would be more likely to satisfy" that requirement. Memorandum and Order, *Warren v. Shalala*, No. 92–203, at 5 (E.D.Ark. Sept. 30, 1993).

## II. JURISDICTION

Warren brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Secretary of Health and Hu-

---

1. Holzner's report said: "is another victim of Dr. Shaneyfelt and Dr. Brown. She was told she had an enlarged heart by Dr. Shaneyfelt recently, and he started her on Isordil, Bumex, and La-noxin." Dr. Holzner said "We threw out her Lanoxin and her Isordil and her Bumex, and we'll see her back in a week."

man Services denying her claim for disability insurance benefits under 42 U.S.C. §§ 416(i), 423 (1988 & Supp. IV 1992). This court has jurisdiction to review the district court's judgment under 28 U.S.C. § 1291 (1988).

## III. STANDARD OF REVIEW

■ Our role on review is to determine whether substantial evidence on the entire record supports the Secretary's decision to deny benefits. *See Sullins v. Shalala,* 25 F.3d 601, 603–04 (8th Cir.1994); *Cook v. Bowen,* 797 F.2d 687, 690 (8th Cir.1986). "The findings of the Secretary ... if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Murphy v. Sullivan,* 953 F.2d 383, 384 (8th Cir.1992); *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984); *Baugus v. Secretary of Health and Human Servs.,* 717 F.2d 443, 445 (8th Cir. 1983). We reverse ALJ findings of fact only if "a reasonable factfinder would have to conclude" otherwise. *See INS v. Elias–Zacarias,* 502 U.S. 478, ——, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992) (citing *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939)).

## IV. DISCUSSION

■ Based on an application filed on June 12, 1984, Warren was awarded supplemental social security income based on disability with an onset date of June 12, 1984. However, she last met the disability insurance status requirements of Title 2 of the Social Security Act on December 31, 1981. 42 U.S.C. §§ 416(i)(3), 423(c) (1988). For purposes of establishing entitlement to both a period of disability and disability benefits, Warren must show that not only has she been under disability, but also that such disability began on or before December 31, 1981. *Battles v. Sullivan,* 902 F.2d 657, 659 (8th Cir.1990).

The Social Security Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1988).

The Secretary has established a five-step evaluation procedure for determining disability within the meaning of the Act. 20 C.F.R. § 404.1520 (1993); *Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986); *Evans v. Shalala,* 21 F.3d 832, 833 (8th Cir.1994). "If a claimant is found to be disabled or not disabled at any step in the sequential process, the ALJ need not proceed further." *Nimick v. Secretary of H.H.S.,* 887 F.2d 864, 865 (8th Cir.1989); *see also* 20 C.F.R. § 404.-1520(a) ("[w]e follow a set order to determine whether you are disabled.... If we can find that you are disabled or not disabled at any point in the review, we do not review your claim further").

Using this five-step test, the ALJ found, and substantial evidence on the record supports, that Warren "has not been engaged in substantial gainful activity since April 15, 1981," and that she had a "severe" impairment, thus satisfying the first and second steps of this test. *Id.* at § 404.1520(b), (c).

Our next question, which is the crux of this opinion, is whether Warren's "impairment meets or equals a listed impairment in appendix 1." If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement, 42 U.S.C. § 1382c(a)(3)(A), which it does, then Warren "is conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York,* 476 U.S. at 471, 106 S.Ct. at 2025; *see also* 20 C.F.R. § 404.1520(a); *Nimick v. Secretary of H.H.S.,* 887 F.2d at 865; *Cook,* 797 F.2d at 691 ("[i]f a severe impairment is of the degree set forth in a listing, then a finding of disability is required"); *Smith v. Heckler,* 735 F.2d 312, 317–18 (8th Cir.1984) (same). The ALJ found that Warren's impairments are not of such degree. *In re Warren,* at 7. We now find that substantial evidence on the record does not support this conclusion. We reverse because a reasonable fact finder would have to conclude otherwise.

Our discussion need be very brief. Warren contends that she meets one of the listings, 12.05C in 20 C.F.R. Part 404, Subpart P, App. 1, which "describes ... impairments

which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a) (1993). Specifically, Warren contends that she meets listing 12.05C because she has an "IQ of 60 through 70 and a physical ... impairment imposing additional and significant work-related limitation of function." The ALJ found, and substantial evidence on the record supports, that Warren has an I.Q. between 60 and 70. Nevertheless, the ALJ found that Warren did not have other impairments "which imposed additional and significant work-related limitations upon her ability to work." *In re Warren,* at 7.

"An impairment imposes significant limitations when its effect on a claimant's ability to perform basic work is more than slight or minimal." *Cook,* 797 F.2d at 690; *Nieves v. Secretary of Health and Human Servs.,* 775 F.2d 12, 14 (1st Cir.1985) (same); *Branham v. Heckler,* 775 F.2d 1271, 1273 (4th Cir.1985) ("the significant limitation under section 12.-05(C) need not be disabling in and of itself"); *Edwards v. Heckler,* 755 F.2d 1513, 1515 (11th Cir.1985) ("[t]hat 'significant' involves something more than 'minimal' but less than 'severe' follows from the regulations").

In our view, given (1) the hard evidence of Warren's chronic back pain, (2) her congenital back disorder, (3) in addition to a variety of other physical ailments—conditions overlooked or at least never mentioned by the ALJ, though clearly stated in the most reliable medical records—there is no doubt that the limitations on Warren's abilities to perform basic work activities are "more than slight or minimal," thus meeting step three. In short, under the federal regulations, 20 C.F.R. § 404.1520(a), the law of the Supreme Court, *Bowen v. City of New York,* 476 U.S. at 471, 106 S.Ct. at 2025, and the law of the Eighth Circuit, *Cook,* 797 F.2d at 691, Warren is presumably disabled and entitled to benefits.

In summary, there was not substantial evidence to support the ALJ's finding and the judgment must be reversed.

## V. CONCLUSION

The judgment of the district court is reversed, and the case is remanded with instructions to remand to the Secretary for the payment of benefits.

FAGG, Circuit Judge, dissenting.

In my view, the judgment should be affirmed. The Administrative Law Judge's opinion denying benefits embodies a clear application of the legal principles that control this case, and the decision is supported by substantial evidence on the record as a whole. Thus, I dissent.