**Karen A. CHELTE, Plaintiff**

v.

**Kenneth S. APFEL, Commissioner, Social Security Administration, Defendant**

**Civil Action No. 99–30020–MAP.**

United States District Court, D. Massachusetts.

Nov. 24, 1999.

Richard C. Roth, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for defendant.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM COMMISSIONER*

(Docket Nos. 7 & 9)

PONSOR, District Judge.

## I. *INTRODUCTION*

Pursuant to 42 U.S.C. § 405(g), Karen A. Chelte seeks review of a final decision by the Commissioner denying her Social Security Insurance benefits. Contending that the decision is not supported by substantial evidence and is premised on legal error, she has moved for judgment on the pleadings with an order to the Commissioner to approve payment of benefits. The defendant moves to affirm the decision of the Commissioner, arguing that the decision is supported by substantial evidence.

Since the Commissioner's decision that plaintiff's HIV impairment did not meet the listing requirements is not supported by substantial evidence, the Commissioner's decision will be reversed and defendant will be ordered to pay plaintiff benefits for the period claimed.

## II. *STANDARD OF REVIEW*

The factual findings of the Commissioner in determining disability shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (1994). Substantial evidence is "more than a mere

scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's decision must be upheld if, upon reviewing the record as a whole, a reasonable mind would find adequate support for the Commissioner's conclusion. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1981) (1st Cir.), citing *Consolidated Edison Co., v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Resolution of conflicts in evidence, including medical evidence, and the determination of disability is the Commissioner's task. *Richardson v. Perales*, 402 U.S. at 399, 91 S.Ct. 1420. If the Commissioner's decision is not supported by substantial evidence, this court has the power to affirm, modify, or reverse it. 42 U.S.C. § 405(g).

### III. *PROCEDURAL AND FACTUAL BACKGROUND*

Karen A. Chelte is a forty-two year old woman who alleges she has been unable to work since 1992 because she experiences severe fatigue related to the Human Immunodeficiency Virus ("HIV") and also suffers bipolar disorder. Prior to her alleged disability, plaintiff worked in a secretarial position, and as a part-time Santa's Helper. She has not worked, however, since 1996.

In 1992, after plaintiff was first diagnosed with HIV, she filed for Social Security Insurance benefits ("SSI") and was approved. Plaintiff was then incarcerated for three years, during which time her SSI benefits were suspended. On January 3, 1996, immediately after her release, plaintiff filed the current application for SSI benefits. On March 26, 1997, the Administrative Law Judge ("ALJ") found that plaintiff was not under a disability. Plaintiff sought review by the Appeals Council. On December 7, 1998, the Appeals Council denied review. On May 12, 1999, plaintiff filed this action seeking to reverse or remand the Commissioner's decision.

On May 2, 1997, plaintiff filed another claim for SSI that was approved on June 4, 1997. Thus the area of dispute concerns only the second claim, covering the period between January 1996 and May 1997.

Plaintiff has been treated by Dr. Eugene Boss since 1988 when he diagnosed her with a bipolar disorder, characterized by depression, social withdrawal, and anxiety. She has been treated for this bipolar disorder with, among other drugs, Lithium.

In 1992, Dr. Boss diagnosed plaintiff with HIV. She has been medically treated for HIV by Dr. Boss since 1992 with a variety of anti-viral drugs, including Bactrim, AZT, DDC, D4T, 3TC, and RTV titrate. She currently takes a 15 pill-a-day "cocktail" of drugs in an effort to control the initial symptoms associated with the onset of AIDS. Since 1992, plaintiff has experienced intermittent extreme fatigue, night sweats, diarrhea, chronic yeast infections, difficulty concentrating, low white cell count, and weight loss, all of which have been documented by Dr. Boss. *See* Record of the proceedings, Docket No. 5 ("Record") at 130–135, 147–150. She also contracted herpes zoster [1] in the summer of 1996 and was treated by Dr. Boss with Famciclovir. Despite this treatment, plaintiff suffered from post-herpetic neuralgia for several weeks, and perhaps months, after onset. Plaintiff is also a former substance abuser. This fact, however, is not at issue in this case. Dr. Boss confirms that plaintiff is disabled and cannot work.

---

1. "Herpes Zoster," also known as shingles, is defined as "an infection caused by a herpetovirus, characterized by an eruption of groups of vesicles on one side of the body following the course of a nerve due to inflammation of ganglia and dorsal nerve roots resulting from the activation of the virus which in many instances has remained latent for years; the condition is self-limited but may be accompanied by or followed by severe postherpetic pain." Steadman's Medical Dictionary, 26th Edition, at 791.

Plaintiff has also been examined by Disability Determination Service ("DDS") physician, Dr. Alonzo Sheffield and DDS psychologist, Dr. Leon Hutt. Both confirmed her HIV status but were uncertain whether she definitely suffered from a bipolar disorder. They found that she suffered at the very least from an affective disorder.[2] *See* Record, at 140, 141, 146. The record was reviewed in June and July of 1996 by DDS reviewing physicians, Drs. Litchman and Tonelli. The remaining eight months of the record was reviewed only by the ALJ.

## IV. *DISCUSSION*

Under the Social Security Act, 42 U.S.C. § 423, a "disability" is the "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has or can be expected to last for a continuous period of not less than 12 months;" 42 U.S.C. § 423(d)(A)(1999). The regulations provide a five-step analysis to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1999).

Under *Goodermote v. Secretary of Health and Human Services,* the Commissioner must ask five questions in the following order:

1) Is the claimant currently employed. If yes, then the claimant is not eligible for benefits.

2) Does the claimant have a severe impairment or combination of impairments?

3) Does the claimant have an impairment equivalent to the list of impairments in Appendix 1? If so, the claimant is found disabled.

4) Is the claimant able to perform work done in the past?

5) If the claimant can not perform work done in the past, other factors including

age, education, past work experience and residual functioning capacity need to be considered.

*Goodermote v. Secretary of Health and Human Services,* 690 F.2d 5, 6–7 (1st Cir. 1982). All parties agree claimant is not employed and therefore passes step one of the disability determination above.

Disagreement arises during steps two and three. The ALJ found that plaintiff's mental impairment was not severe, and therefore did not fill the requirements of step two of the *Goodermote* analysis. Further, the ALJ found that plaintiff's HIV status, while severe, did not meet any listed impairments in the Regulations. Neither of these determinations, however, rests on substantial evidence.

### A. *HIV as a Disability*

Both parties agree that plaintiff's HIV status rises to the level of a severe impairment in fulfillment of step two of the *Goodermote* analysis. At step three of the analysis, the ALJ found that plaintiff's condition did not meet the requirements of the listed impairment as set out in 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.08. Because the ALJ did not evaluate plaintiff's symptoms under all the relevant listings, because he relied too heavily on his lay opinion, and because the reviewing physicians did not consider a full record, the determination is unsupported and erroneous. In fact, plaintiff's symptoms associated with HIV meet the listing requirement in 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.08 in any one of three ways, all of which qualify her as disabled.

■ First, listing 14.08(D) provides that an HIV positive claimant with "herpes zoster, either disseminated or with multidermatonal eruptions that are resistant to treatment" meets the listing requirement. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, listings 14.08(D). Claimant contracted

---

**2.** "Affective disorder" is defined as "a disturbance of feelings or mood expressed as a milder form of depression and related emotional features that color the whole psychic

life and for which psychosocial stressors are believed to play a major role." Steadman's Medical Dictionary, 26th Edition, at 507.

herpes zoster in May 1996 and was treated by Dr. Boss with Famciclovir. Record, at 149. The treatment, however, was not successful and she suffered from post-herpetic pain for a substantial time after onset. The record shows that Dr. Boss noted decreasing post-herpetic pain as late as December 1996. *See* Record, at 162. Herpes zoster, a self-limiting virus, normally runs its course in two to three weeks. Claimant suffered complications long after three weeks. This indicates that the virus was resistant to treatment. Plaintiff's symptoms thus meet the listing requirement, and qualify her as disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, listings 14.08(D).

■ Further, an error of law underlies this decision. The ALJ relied on nontreating physician review of only a partial record. A report given by a nontreating physician is entitled to evidentiary weight but cannot be the sole factor of an ALJ's decision. *See Browne v. Richardson*, 468 F.2d 1003, 1006 (1st Cir.1972); *Berrios Lopez v. Secretary of Health and Human Services*, 951 F.2d 427, 431 (1st Cir.1991); *DiVirgilio v. Apfel*, 21 F.Supp.2d 76, 80–81 (D.Mass.1998). The weight given such a report should vary depending on the circumstances. *See Berrios Lopez*, at 431. Among the factors to consider is "the availability of most of the medical evidence to the non-examining physician." *See Divirgilio*, at 81. In this case, none of the evidence of plaintiff's symptoms associated with herpes zoster was included in the records DDS reviewers used in making their determinations. Here, these nonexamining physicians only reviewed a partial record, never seeing vital information contained in the unreviewed portion. Thus, their report, while noteworthy, cannot be the sole factor in determining disability.

■ The ALJ then analyzed the remaining record on his own, without the benefit of a reviewer's report. It is this last eight months of the record that contains Dr. Boss's notes on plaintiff's herpes zoster. The ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician." *Gonzalez Perez v. Secretary of Health and Human Services*, 812 F.2d 747, 749 (1st Cir.1987). *See also Nieves v. Secretary of Health and Human Services*, 775 F.2d 12, 14 (1st Cir.1985). No contradictory evidence by a physician exists in the record concerning plaintiff's virulent herpes zoster. The ALJ's attempt to interpret a medical record, on his own, disregarding the presence of uncontroverted evidence, led him to error.

■ Second, plaintiff should also have been determined disabled under listing 14.08(F).[3] This listing provides that a person with HIV who is also suffering from chronic conditions of the skin or mucous membranes with extensive fungating lesions not responding to treatment shall be considered disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, listings 14.08(F). There is uncontroverted evidence that plaintiff suffered then and continues to suffer routinely from vulvovaginal candidas,[4] *see* Record, at 18, 143, 149, a condition included specifically in the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.08(F). Further, the regulations warn adjudicators to pay special attention to manifestations specific to women, stating "many of these manifestations (e.g. vulvovaginal candidas, pelvic inflammatory disease) occur in women with or without HIV infection, but can be more severe or resistant to treatment, or occur more frequently in a woman whose immune system

---

**3.** This issue was not raised by plaintiff, however, upon review, this court found it to be an obvious listed impairment of plaintiff.

**4.** "Vulvovaginal candidas," or yeast infection, is defined as "infection [relating to the vulva or vagina] with, or disease caused by, *Candida*, especially *C. albicans*. This disease usual-

ly results from debilitation (as in immunosuppression and especially AIDS) physiologic change, prolonged administration of antibiotics, and iatrogenic and barrier breakage." Steadman's Medical Dictionary, 26th Edition, at 269.

is suppressed. Therefore, when evaluating the claim of a woman with HIV infection, it is important to consider gynecologic and other problems specific to women." 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.00(D)(5). Here, the ALJ made mention of plaintiff's chronic yeast infections, but did not address them as a possible listed manifestation of HIV symptoms. This failure to recognize properly the extent of plaintiff's listed impairment is yet another manifestation of the insufficient evidence upon which this ALJ's decision rested.

█ Even had plaintiff not squarely met the listings discussed above, she would have still met a third listing in section 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.08(N). This section provides for those who exhibit manifestations of HIV infection (including those already discussed) that do not meet the specific listed impairments of the other sections.[5] The ALJ again found that plaintiff did not meet this listing. Admittedly, determinations under this listing contain a more subjective element absent in listings discussed earlier. Nevertheless, no substantial evidence supports the ALJ's conclusion that the listing was not met. In fact, the objective evidence is to the contrary.

Plaintiff has repeated manifestations of the HIV virus.[6] She suffers from recurrent diarrhea, herpes zoster, and vaginal yeast infections. *See* Record, at 147, 149, 150, 157. These manifestations have resulted in significant, well-documented symptoms of fatigue, malaise, weight loss, pain, and night sweats. *See* Record, at 147, 149, 150. Plaintiff's symptoms have been and continue to be accompanied by difficulties in maintaining social functioning and difficulties in completing tasks in a timely manner due to difficulty concentrating. *See* Record, at 138, 143, 153, 175, 126. Although plaintiff is able to visit with her child and sister about once a week, she finds it extremely difficult to engage in any social interactions beyond these few. This is uncontested. Further, though plaintiff is able to keep her house in order, she is forced to perform household duties early in the day, because she becomes too fatigued to perform them in the afternoon. *See* Record, at 126. She claims she lacks the energy or concentration to perform tasks throughout the day. These symptoms are also uncontested. Because plaintiff exhibits difficulty in maintaining social functioning, and difficulty in completing tasks in a timely manner, she meets the requirements of the 14.08(N) listing impairment.

Of the three possible listings under which plaintiff could be evaluated, herpes zoster, vulvovaginal candidas, and the more general listing in 14.08(N), this court finds plaintiff to fall clearly within all three. Plaintiff should thus be deemed disabled based on her HIV status, and paid disability benefits for the period in question.

B. *Bipolar Disorder as a Severe Disability*

█ Even if reversal were not required, the court would be compelled to remand

---

**5.** The section provides a listed impairment for those with repeated manifestations of HIV "resulting in significant documented symptoms or signs (e.g. fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at a marked level:

   1. Restriction of activities of daily living; or

   2. Difficulties in maintaining social functioning; or

   3. Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."

20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.08(N). Also, 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.00(D)(8) provides guidance for determining the parameters of the above "restrictions" and "difficulties."

**6.** For a definition of "repeated," see 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 14.00(D)(8) (defining "repeated" as occurring "on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; or the conditions do not last for 2 weeks but occur substantially more frequently than 3 times in a year or once every 4 months; or they occur less often then an average of 3 times a year or once every 4 months but last substantially longer than 2 weeks.")

this case for further evaluation of plaintiff's mental impairment, since the ALJ's conclusion that plaintiff's mental disorder did not pass step two of the *Goodermote* five-step analysis is not based on substantial evidence. The second step of *Goodermote* concerns whether the impairment claimed is "severe." This step is "to be a *de minimus* policy, designed to do no more than screen out groundless claims." *McDonald v. Secretary of Health and Human Services,* 795 F.2d 1118, 1124 (1st Cir.1986) (citing Social Security Ruling 85–28). *McDonald* also warns ALJs that "great care should be exercised in applying the not severe concept. If an adjudicator is unable to determine clearly the effect of an impairment . . . on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.* at 1125.

In this case, plaintiff's mental impairment is acknowledged by all clinicians as *at least* an affective disorder, if not a clear bipolar disorder. Further, the effects of plaintiff's mental disorder, while perhaps contested as to their degree, are uncontested as to their general nature. Even the DDS physician agrees plaintiff suffers from some affective disorder. *See* Record, at 140, 141, 146. Since there is no controversy over its existence, the ALJ should have proceeded to evaluate the mental disorder by moving to the next step of the *Goodermote* analysis.

A final determination of plaintiff's mental impairment claim is not necessary because plaintiff is clearly disabled by her HIV symptoms alone.

## V. *CONCLUSION*

For the above reasons, plaintiff's motion for judgment on the pleadings (Docket No. 7) is ALLOWED, and defendant's motion to affirm the Commissioner (Docket No. 9) is DENIED. Because this decision rests entirely upon the original record, defendant's motion to strike additional material offered by plaintiff (Docket No. 11) is DENIED as moot. Defendant will be or-

dered to pay plaintiff Social Security benefits for the period commencing on January 3, 1996 and terminating on June 4, 1997.

A separate order will issue.

### *ORDER*

For the reasons stated in the accompanying Memorandum, Defendants' Motion for Order Affirming Decision of Commissioner (Docket No. 9) is hereby DENIED and Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is hereby ALLOWED. The decision of the Commissioner is reversed and the clerk is ordered to enter judgment for the plaintiff. Because this decision rests entirely upon the original record, defendant's motion to strike additional material offered by plaintiff (Docket No. 11) is DENIED as moot. Defendant is hereby ordered to pay plaintiff Social Security benefits for the period commencing on January 3, 1996 and terminating on June 4, 1997.

It is So Ordered.